UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| PAUL BENITO SEGURA FERNANDEZ,<br>    Petitioner,<br><br>    v.<br><br>MICHAEL NESSINGER, *in his official capacity as Warden of the Donald W. Wyatt Detention Facility*; DAVID T. WESLING, *in his official capacity as Field Office Director, ICE Boston Field Office*; DAVID VENTURELLA, *in his official capacity as Acting Director of U.S. I.C.E.*; MARKWAYNE MULLIN, *in his official capacity as Secretary of Homeland Security*; U.S. DEPARTMENT OF HOMELAND SECURITY; and TODD BLANCHE, *Acting Attorney General of the United States*,<br>    Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 26-cv-491-JJM-PAS |

ORDER

Paul Benito Segura Fernandez has filed a habeas petition under 28 U.S.C. § 2241, arguing that his arrest and continued detention by Immigration and Customs Enforcement ("ICE") is unlawful, and that he is entitled to immediate release from ICE detention.  ECF No. 1.

The Government's position is that Mr. Segura Fernandez is lawfully detained pursuant to 8 U.S.C. § 1225(b)(2).  ECF No. 6 at 1.  As support for this position, the Government cites to recent decisions from the Eighth and Fifth Circuits.  *Id.*; *see*

*Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026).  These cases stand for the idea that all noncitizens present in the United States who have not been admitted or paroled are "applicant[s] for admission" that are "seeking admission" into the country, and they are thus subject to mandatory detention.  *See* 8 U.S.C. § 1225(b)(2); *Avila*, 170 F.4th at 1134-35; *Buenrostro-Mendez*, 166 F.4th at 502.

The Government ignores the fact that this Court is not bound by decisions from the Eighth and Fifth Circuits.  Indeed, this Court—and the overwhelming majority of district courts—have rejected the Government's position.  *See, e.g.*, *Morales v. Hyde*, No. 26-cv-093-JJM-PAS, 2026 WL 508811, at *1 (D.R.I. Feb. 24, 2026) (collecting cases from the District of Rhode Island); *Ndayikeza v. Nessinger*, No. 26-cv-435-JJM-PAS, 2026 WL 1983330, at *1 (D.R.I. July 9, 2026) (collecting even more cases from the District of Rhode Island); *Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 494 (S.D.N.Y. 2025) (explaining that similarly situated petitioners "have prevailed, either on a preliminary or final basis, in 350 [out of 362] cases decided by over 160 different judges sitting in about fifty different courts spread across the United States").

Four federal courts of appeals have also rejected the Government's position. *See Barbosa da Cunha v. Freden*, 175 F.4th 61, 69 (2d Cir. 2026) (holding that 8 U.S.C. § 1225(b)(2)(A) "does not apply to . . . noncitizens, who are present in the United States after entering the country without inspection and admission, and who were not apprehended while entering the country or shortly thereafter"); *Hernandez*

2

*Alvarez v. Warden, Fed. Det. Ctr. Mia.*, 175 F.4th 1258, 1262 (11th Cir. 2026) ("We are unpersuaded by the Government's re-interpretation of § 1225(b)(2)(A)."); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 732 (6th Cir. 2026) ("We therefore find that an 'applicant for admission' is not necessarily 'seeking admission.' Because no Petitioner is alleged to be seeking admission or lawful entry into the United States, § 1225(b)(2)(A)'s mandatory detention scheme does not apply to them."); *Santillan Quiroz v. Mullin*, No. 26-6019, --- F.4th ----, 2026 WL 1876709, at *13 (10th Cir. June 30, 2026) (concluding that "§ 1225(b)(2)(A) is limited to the border, and that [petitioner] is an 'applicant for admission' but not 'seeking admission'"). This Court finds those decisions to be persuasive.

Just in case it bears repeating, the Court will remind the Government that its power to detain a noncitizen must be grounded in a specific provision of the Immigration and Nationality Act ("INA"). *See Gonzalez Lopez v. Wesling*, 828 F. Supp. 3d 284, 288 (D.R.I. 2026); *accord Hechavarria v. Sessions*, 891 F.3d 49, 54 (2d Cir. 2018). Here, the Government argues that 8 U.S.C. § 1225(b)(2) is the authority that gives it the power to detain Mr. Segura Fernandez. ECF No. 6 at 1. Not so.

As this Court has stated in *Tomas Elias* and the litany of cases that have followed it, this INA provision does *not* provide the Government with the legal authority to detain individuals in Mr. Segura Fernandez's position. *See, e.g.*, *Tomas Elias v. Hyde*, No. 25-cv-540-JJM-AEM, 2025 WL 3004437, at *2-3 (D.R.I. Oct. 27, 2025). As someone who has resided in the United States since 2022, *see* ECF No. 1 at 3, Mr. Segura Fernandez cannot fairly be described as someone who is "seeking

3

admission" into the country.  What is more, in 2024, an IJ previously ordered Mr. Segura Fernandez released on bond (i.e., the "2024 Bond Order") under 8 C.F.R. § 1236, which is one of the regulations that directly corresponds with the standard for bond hearings under Section 1226(a).  ECF No. 1-3 at 1 (displaying IJ's order in which Mr. Segura Fernandez's request for release on bond was granted under 8 C.F.R. § 1236); *see Sampiao v. Hyde*, 799 F. Supp. 3d 14, 21 (D. Mass. 2025) (discussing the pertinent regulation).

Even more significant is that, in its own Notice of Custody Determination issued on June 27, 2026, ICE conceded that Mr. Segura Fernandez was to be detained "[p]ursuant to the authority contained in [Section 1226(a)] of the [INA] and [8 C.F.R. § 236]."  ECF No. 6-2 at 1.  8 C.F.R. § 236 is, in fact, the other regulation that corresponds with the bond hearing standard under Section 1226(a).  *See Urbaez Peguero v. Nessinger*, No. 26-cv-456-JJM-AEM, 2026 WL 2056751, at *1 (D.R.I. July 16, 2026) (citing *Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021)).  Given all of these considerations, 8 U.S.C. § 1225(b)(2) does not and cannot apply to Mr. Segura Fernandez.

The Government ultimately submits that "the legal issues presented in [Mr. Segura Fernandez's] Petition are similar to those recently addressed by this Court in *Tomas Elias*," and that, "[s]hould the [C]ourt apply the reasoning in *Tomas Elias . . .*, it would likely find that [Mr. Segura Fernandez] merits habeas relief."  ECF No. 6

at 2.[1]  The Court agrees.  Based on the reasoning provided in *Tomas Elias*, the Court finds that Mr. Segura Fernandez merits habeas relief, and it will therefore GRANT his Petition.  ECF No. 1.

As for next steps, there is a dispute over what remedy is proper for Mr. Segura Fernandez.  The Government argues that the Court should deny Mr. Segura Fernandez's request for immediate release from ICE custody and asks that he only be granted a bond hearing.  ECF No. 6 at 1 n.2.

Of course, this is completely antithetical to the Government's original position. The Government has consistently maintained that those who are subject to 8 U.S.C. § 1225(b)(2) are statutorily *ineligible* for bond hearings.  *See, e.g.*, *Matter of Q. Li*, 29 I&N Dec. 66, 69 (BIA 2025) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 298 (2018)). And, in this case, the Government does not claim that it has the authority to detain Mr. Segura Fernandez under any statute other than 8 U.S.C. § 1225(b)(2).  But again, this statute does not apply to Mr. Segura Fernandez's particular circumstances.

Recall that the Government's power to detain *must* be grounded in a specific provision of the INA.  Thus, considering that the Government did not have the legal authority to detain Mr. Segura Fernandez in the first place, and given that it fails to cite any other authority under which he may be detained, it follows then that the proper remedy is to order Mr. Segura Fernandez's immediate release.  *See Preiser v.*

---

[1] The Court omits portions of the Government's briefing that assert that Mr. Segura Fernandez argued that "he is a class member under the ruling of *Guerrero Orellana v. Moniz*, 802 F.Supp.3d 297 (D. Mass. 2025)."  ECF No. 6 at 2.  However, the Government seems to be mistaken because Mr. Segura Fernandez never presents such an argument in his habeas petition.

*Rodriguez*, 411 U.S. 475, 484 (1973) ("It is clear . . . that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody.").

Additionally, in this case, unlike in other immigration habeas cases, Mr. Segura Fernandez does not request that the Court order a bond hearing.  In fact, he asks that the Court grant his petition without ordering a bond hearing because an IJ already granted him bond in 2024.  ECF No. 1 at 17; *see also* ECF No. 1-3 at 1.  Mr. Segura Fernandez instead asks that he be released under his existing 2024 Bond Order.  ECF No. 1 at 17.

Mr. Segura Fernandez's point is well taken.  Once a noncitizen has been ordered released on bond by an IJ, Section 1226(b) vests the Government with broad discretion to revoke that bond, specifically stating that DHS "at any time may revoke a bond or parole authorized under [Section 1226(a)], rearrest the [noncitizen] under the original warrant, and detain the [noncitizen]." 8 U.S.C. § 1226(b).  Longstanding Board of Immigration Appeals ("BIA") precedent also provides that "where a previous bond determination has been made by an [IJ], no change should be made by a District Director absent a change of circumstance." *Matter of Sugay*, 17 I&N Dec. 637, 640 (BIA 1981).

Here, the Government has not argued or presented evidence that Mr. Segura Fernandez's 2024 Bond Order has been revoked. *See* 8 U.S.C. § 1226(b).  Nor has the Government argued that there is "a change of circumstance" to justify Mr. Segura Fernandez's re-detention. *See Matter of Sugay*, 17 I&N Dec. at 640.  All ICE could

muster when it re-arrested Mr. Segura Fernandez on June 27, 2026 was that there were "ongoing removal proceedings against the subject," and that there were "statements made voluntarily by the subject to an immigration officer and/or other reliable evidence that affirmatively indicate the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." ECF No. 6-1 at 1 (displaying ICE's warrant for Mr. Segura Fernandez's re-arrest).

But this information should hardly come as a surprise to ICE. As far back as August 22, 2024, when ICE issued Mr. Segura Fernandez a Notice to Appear ("NTA") and charged him as removable under the INA, the agency alleged that he was "a[ ] [noncitizen] present in the United States who has not been admitted or paroled." ECF No. 6-4 at 1 (displaying Mr. Segura Fernandez's NTA). And this information was also available to the IJ when she ordered Mr. Segura Fernandez released on bond just a few months later on November 14, 2024. ECF No. 1-3 at 1-2.

In essence, the Government has failed to show that ICE revoked Mr. Segura Fernandez's 2024 Bond Order or that his re-detention was justified by a change of circumstances. Unless and until the Government carries the burden of demonstrating either of these two things, the proper remedy is for Mr. Segura Fernandez to be released from custody subject to his 2024 Bond Order. *See dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988, at *9 (D. Mass. Aug. 14, 2025) (ordering similar relief and collecting cases that stand for the same proposition).

## CONCLUSION

The Court therefore GRANTS Mr. Segura Fernandez's habeas petition.  ECF No. 1.    The  Government  is  hereby  ORDERED  to  **release Paul Benito Segura Fernandez immediately** subject to the conditions of his 2024 Bond Order.

Per its request, the Government is permitted to transfer Mr. Segura Fernandez to ICE's Boston Field Office in Burlington, Massachusetts for the sole purpose of processing his release and allowing for any return of property.  ECF No. 6 at 1 n.2. However, the Court DENIES the Government's additional request to place "any monitoring equipment deemed appropriate."  *Id.*  Because the Government did not have the lawful authority to detain Mr. Segura Fernandez in the first place, the Court will  not  permit  the  Government  to  keep  him  "in  custody"  through  the  use  of monitoring equipment pending the bond hearing.  *See Morales*, 2026 WL 508811, at *3-4 (denying similar request from the Government because "[i]t does not follow . . . that ICE gets to keep [the petitioner] 'in custody' once he leaves the Wyatt Detention Facility").  Effectuating Mr. Segura Fernandez's transfer to Burlington shall not in any way impede his **immediate release**.

Finally, the Court ORDERS the Government to file a status report within twenty-four (24) hours of the date of this Order, confirming that Mr. Segura Fernandez has been released from custody.

8

IT IS SO ORDERED.

*John J. McConnell, Jr.*

_____

JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court


July 29, 2026